Good morning. Good morning. May it please the Court, my name is Jay Nelson from the firm Coleman & Ballot. We represent the appellant, James Allen. I'd like to begin by addressing the question posed by the Court in its order of May 21st, which is what is the effect of King v. Ryan in our case? The effect is twofold. First, King speaks to the validity and continued vitality of the Kelly stay-in-advance procedure after the Supreme Court's decision in Ryan v. Weber. An explicit holding of King was that Kelly is alive and well, it remains the law of his circuit, and it's available to district courts. I'd also like to point out, as we did yesterday in our 28J letter, which I hope the Court was able to review prior to this morning's hearing, that even before King, but after Ryan's, this Court unequivocally stated that Kelly remains a good law and is available to district courts. Now, Robbins was on the books before Mr. Allen filed his habeas petition, was on the books, therefore, before the district court ruled in this case. So between Robbins and King, I submit to the Court that at this point there's really no question that Kelly remains the law of the circuit and it was available to district courts. Kennedy, were you the lawyer for Mr. Allen when this matter came up in the district court? No, no. Well, let me ask you about Robbins. Doesn't Robbins say that a district court is not required to consider the Kelly procedure sua sponte? That's right, Your Honor. Why doesn't that doom your case? Because in this case, Mr. Allen specifically moved for a stay. But he didn't ask for the Kelly procedure. He wanted the whole petition to be stayed, right? He was asking, well, it wasn't entirely clear what he was saying. Right. Because the court doesn't have to stay the entire petition when it contains exhausted and unexhausted claims. So that would not be permissible, to stay a petition that has exhausted and unexhausted claims, right? Do we agree on that? Well, it depends on whether you're considering the Robbins procedure or the Kelly procedure. No. I'm asking you, would it be appropriate for a district court to stay a petition that contained exhausted and unexhausted claims? It could be appropriate, yes, under Ryan's. Under what? Under Ryan's v. Weber. What in Ryan would say? Because we don't have jurisdiction, or a district court doesn't have jurisdiction over a mixed petition. It has to be dismissed. Ryan v. Weber carved out an exception to the total exhaustion requirement, which would permit a court under limited circumstances to hold and stay in a petition that contains both unexhausted and exhausted. Now, what language in Ryan? You said Ryan says that? Ryan's v. Weber, United States Supreme Court. Okay. Ryan's. What's the language in Ryan's that you think would enable a district court to stay in a petition that contains exhausted and unexhausted claims? Let me pull it up, Your Honor. Well, I don't waste your time looking for it. I thought you had the language at hand since you made that point. But you can do it on rebuttal so that you don't use your time there looking for it. Thank you, Your Honor. In addition, the other, the second effect of King v. Ryan that's important in this case is it speaks to the contention of the State that Mr. Ryan should be required to demonstrate that his claims are valid prior to the issuance of the State. Doesn't Kelley's procedure require that there be some at least arguable merit in the new claim he wants to make? No, Your Honor. Nothing in Kelley, as far as Mr. Allen reads it, requires that the claims be demonstrated to be valid prior to the issuance of the State. The opinion does use the word valid, but that's in the context of a statement which was essentially dicta holding that, excuse me, State. That's just common sense, isn't it? Why waste the Court's time if you're not, if you're just going to make a rhetorical claim that doesn't have any merit? The same applies, Your Honor, to the good cause requirement, which King rejected in that decision. And the rationale was that the good cause of the meritorious claim and the timeframe requirements that were imposed by the Court as safeguards in Ryan v. Webber, by the Supreme Court in Ryan v. Webber, didn't apply under the Kelley procedure. But Ryan's does talk about, you know, the circumstances under which you can stay the entire claim. It does include a component that the claims not be meritless. That's right. And that is in response to the Supreme Court's concern that when a petitioner is allowed to stay a mixed petition, that the unexhausted claims are no longer subject to the statute of limitations. And that results... If they're, if they have merit. If these three conditions are met, right? Right. If there's good cause for the failure to exhaust, the claims have merit and the timeliness, and they're timely. Those three conditions are imposed. In contrast to Kelley, those three conditions are imposed because the petitioner is permitted to stay the entire mixed petition. Exactly. But it's conditional. That's right. And in Kelley, by contrast, the petitioner is not permitted to stay the entire mixed petition. He's only permitted to stay the exhausted claims. And as a result, the unexhausted claims are still subject to the statute of limitations. And that's why the Court held in King that the good cause requirement should not be imported from Ryan's. And the exact same rationale applies to the meritorious claim requirement. There's no reason to import that under King. And that's why I would ask the Court to reject the government's argument in that contention, in that respect. Mr. Nelson, is there any significance in King v. Ryan, when they were discussing the Ryan stay, they used the word meritless, and then as you pointed out in your reply brief and the government pointed out, the sixth word from the end of the third section in King uses the word valid. Are they similar? Are they identical? Is there any significance to the fact that they used meritless earlier and then used valid in describing the Kelley procedure? It's entirely unclear what the word valid means. And that's because there are no decisions on the books that Mr. Allen is aware of, and the government has cited none, requiring that a petitioner demonstrate the validity of his claims prior to receiving the stay. So are we to disregard that, you're saying? Yes. Disregard the language? The language speaks to a specific circumstance, which is that this Court has held that if a claim is demonstrated to be valid, then it would be an abuse of discretion not to grant the stay. But the Court has never spoken to the reverse scenario, and I would suggest I would submit that's because there is no requirement that the claims be demonstrated to be valid. It's never been an explicit element of the procedure. Mr. Nelson, could you read it this way, that it's clearly appropriate to issue a stay when there are valid claims, and it may or may not be appropriate to issue a stay when the claims lack merit? That is one plausible reading. But again, there's no – there's nothing to indicate that this has ever been a requirement. If it's a plausible reading, then a district court would not abuse its discretion if it – or would not err if it dismissed it if the reading is plausible. It could abuse its discretion. If I could reserve the rest of my time for that. All right. Thank you. May it please the Court, Tammy Hennick on behalf of the government. The government's position, as outlined in our brief, is that the failure – I mean, the failure to implement McKelley's three-step procedures here is harmless because Petitioner's arguments were invalid or lack merit. If there's not discretion to deny a stay where the claims are not valid or have no merit, then the district court essentially has no discretion to deny a stay, because the only other requirement under Kelley is timeliness. And the timeliness factor for Relation Back doesn't come into play until after the stay would have been implemented and the Petitioner would have gone back and exhausted his claims and then tried to amend in State – in Federal court. So then if Petitioner – or if Appellant's position is correct, that there's no requirement or that the government doesn't have – or I'm sorry, that the court doesn't have discretion to look at the merits of his argument, then essentially the court would abuse its discretion any time it denied a stay amidst Petition. Counsel, are you equating the terms merit and validity? I think – our position is that merit and validity here are basically interchangeable, but essentially mean it's not a waste of time. If it's a waste of time to allow a Petitioner to go back to State court to exhaust claims that are plainly invalid or meritless, then what is the point? It would – you know, it's a complete waste of judicial resources. How did the court determine whether or not a claim is invalid? Well, a court – a court has discretion already under USC – I'm sorry – but to deny – to deny an unexhausted claim on the merits. It already has that discretion to deny an unexhausted claim on the merits. So I think it's the same discretion as far as being able to deny a claim on the merits in this situation. You look at the face of the claim. I hear the district court did look at the arguments made by Petitioner and the arguments made by the government and found the government's arguments persuasive, noting that the Petitioner made no attempt whatsoever to defend the merits of his claim. Nowhere in the Petitioner or Appellant's briefing did he make any mention of the merits of his claim, because if you take a look at them, they are beyond merits. Well, on one of them, the insufficient evidence claim had been in one of the exhausted claims. I couldn't see any difference in the unexhausted insufficient evidence claim than the exhausted. Well, what his exhausted insufficient evidence claim had to do with the – his intent – I'm sorry, the presence, whether or not the victim was present for the purpose – purposes of carjacking under the California carjacking statute. His other insufficient evidence claim, the two that he raises, his unexhausted claims, were that there was no evidence that he used force or fear for the carjacking or force or fear for the robbery, because his victim was already blindfolded, tied up, gagged on the floor, and had been there for some time. So by the time this guy decided to take the victim's keys and wallet, there's no force or fear, because, you know, what? Blink twice if I can have your keys. I mean – The force and fear had worn themselves out before he made off with the loot. Right. By that time, the victim – yeah. And, I mean, I guess not surprisingly, the California Supreme Court has already heard and rejected this same claim. Well, that's what I was wondering, is why wouldn't they seem to be just a duplication of it? Mm-hmm. And, you know, the last point that I would like to make is that if the petitioner's or the – I'm sorry – the appellant's interpretation of King is correct, then we have the problem, again, with undermining ADEPA's twin purposes, which was the whole reason the U.S. Supreme Court took up Rines and held the way it did. And while we realize that Kelly is still good procedure under Rines, there has to be more than any time you submit an unexhausted petition or a mixed petition, you automatically get a stay, because the whole purpose of ADEPA is to reduce the delays in executing these state court judgments, and also to encourage petitioners to exhaust their claims in state court. And basically, to say that there's no requirement that your claims have merit puts us back in the exact same place we were, you know, before ADEPA. So… Counsel, in this case, did the petitioner actually ask for the Kelly procedure? He didn't ask for it. He didn't ask for the Kelly procedure specifically. He was pro se, I believe, in the district court. But he came pretty close. Right. But, again, he didn't argue that his… He argued that the unexhausted and the exhausted claims should be severed. Right. And the unexhausted claims be taken to state court while the exhausted claims remain in federal court. Not specifically, but basically. So you think it was close enough? And even if he had done that, I mean, at the time, in the district court's defense, even if he had, even if the district court had tried to parse out, oh, sure, this petitioner is asking for the Kelly procedure, it wasn't clear because after King it wasn't, I mean, I'm sorry, after Rines it was not clear the Kelly procedure was still good law. So most practitioners were operating under the assumption that Kelly was no longer the procedure, but that it was Rines. So when King came, you know, this happened in between Rines and King. But, again, our position is even if the court had implemented Kelly's three-step procedure, petitioner's claims were so without merit that any failure to implement or err in not implementing the three-step procedure is harmless. If the court has no further questions, please. Thank you. The crux of Mr. Allen's argument is that the district court committed error by refusing to recognize the existence of the Kelly procedure, and that's why this court is not the appropriate forum to litigate whether his claims do or do not have merit, whether they do or not. But you're saying it's plain error since the record doesn't show that he actually moved for a Kelly. Well, I believe the appropriate standard is abuse of discretion as far as I understand, and it wasn't abuse of discretion because he was proceeding for a stay, Your Honor. And in that respect, I would ask the Court to construe his motion for a stay liberally. He explicitly moved for a stay, and when the district court denied his stay, he moved for essentially reconsideration of that order. He asked for a stay at least twice in written papers, and the district court misstated the law when it failed to recognize the existence of the Kelly procedure. And what we're asking the Court to do respectfully is to ---- Well, the Court doesn't have to sui sponte advise a litigant of the existence of the Kelly procedure. They don't have to give legal advice. That's correct. Right. He did move for a stay, however, and the Court was aware of the Kelly procedure because the Attorney General cited Kelly in a footnote in its opposition to Mr. ---- Yeah, of course the Court's aware, but the Court doesn't have to say, you have this option to invoke the procedure whereby you can leave your exhausted claims here and go to the state court. There's no requirement for the Court to do that. The facts of Robbins were limited, however, to the extent that that petitioner did not move whatsoever for a stay. Here we have a petitioner who explicitly moved for a stay twice, and the Court was aware of Kelly and Ryan, and it only applied Ryan. But the Court doesn't have the obligation to advise specifically even a pro se litigant of what the Kelly requirements are. That's correct. It had the obligation to, once it was aware of the law, to analyze the claim in light of that law and to apply the facts of this case to that law and render a ruling in that regard. I would also like to point, Judge Watson, in response to your question, that Rynes v. Weber held that a mixed petition may be stayed at ---- With those conditions. Subject to the three conditions, yes, at page 278 of the opinion. Mr. Nelson, what goal or principle could possibly be advanced by allowing or requiring the exhaustion of meritless claims? There would be the goal advanced is the policy of liberally forbidding a stay because it would be questionable. What's your answer? It would be questionable. What would be questionable? The policy permitting the exhaustion of meritless claims. So if we determine from the record that the claims were meritless, then you would concede that your client should not prevail? No. No, Your Honor. We contend that Mr. Allen's claims do have merit. That has not been fully briefed, and this is not the appropriate form to litigate the case. My question was, if we determine from the record that your client's claims are meritless, do you lose? No. I'd ask the court to remand to the district court to issue a ruling in the first instance on that question. If we determine from the record that your client's claims are meritless, do you lose? No, Your Honor. The claims have merit. If you determine that the claims are meritless? Right. Do you lose? No, because King and Kelly do not require a lid to the claims to be valid. All right.
judges: Aldrich, Bennett, Goodwin